UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

In the Matter of SARASOTA YOUTH
SAILING PROGRAM, INC., as owner of
the *Caribe I*, a 2011 Caribe DL20 motor vessel
bearing hull identification number
EMDU0004K011 and Florida Registration:
FL 6031, together with its Engines, Tackle,
Appurtenances, Equipment, & Etc., in a cause
for Exoneration from or Limitation of Liability,

Case No. 8:21-cv-150-CEH-CPT

    Petitioner.
_____/

**O R D E R**

Before the Court is claimant Riley Baugh's motion to extend the Court's injunction precluding the prosecution of claims against Petitioner Sarasota Youth Sailing Program, Inc. (Sarasota Youth Sailing), to include all claims and proceedings currently pending against Baugh in state court. (Doc. 18). For the reasons set forth below, Baugh's motion is denied.

I.

This case arises out of a November 2020 maritime incident that occurred while Baugh was operating a vessel owned by Sarasota Youth Sailing, Baugh's then employer. (Docs. 1, 10, 16, 17). According to the filings to date, Baugh allegedly lost

control of the vessel, causing it to kill Ethan Max Isaacs and injure Lauren-Taylor Nock. *Id.* Malinda Martin Isaacs, as the personal representative of Ethan Max Isaacs' estate (hereinafter, Isaacs), as well as Eugene Nock and Jessica Nock, as parents and natural guardians of Lauren-Taylor Nock (hereinafter, Nock), filed separate state court lawsuits against Baugh. (Doc. 20 at 5; Doc. 21 at 4–5).

In January 2021, Sarasota Youth Sailing initiated this action seeking to minimize, if not eliminate altogether, its exposure to any liability arising from the incident pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501–30512 (the Act), and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental Rule F). The Act grants a vessel owner, like Sarasota Youth Sailing, the right to confine its liability for damages or injuries arising from a maritime accident to either the vessel's value or the owner's interest in the vessel and pending freight, provided that the accident occurred without the owner's privity or knowledge. 46 U.S.C. § 30505; *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996).

The Act, along with Supplemental Rule F, sets forth the procedures for such limitation proceedings. In short, a vessel owner wishing to invoke the Act's protections must file a federal action pursuant to the Act and deposit with the court a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or deposit approved security therefor. 46 U.S.C. § 30511; Fed. R. Civ. P. Supp. R. F(1). If the vessel owner complies with these requirements, the Act authorizes the court where the case has been brought to stay all proceedings against the owner or the

owner's property regarding the matter in question and to direct all potential claimants to submit their claims against the owner with that court. Fed. R. Civ. P. Supp. R. F(3), (4).

In accordance with this procedure, Sarasota Youth Sailing filed an Ad Interim Stipulation for Costs and Value as security for any claims stemming from the incident here.[1] (Doc. 3). At the same time, Sarasota Youth Sailing requested that the Court bar the further prosecution of any proceedings against it arising from any claims subject to limitation and mandate that any claimants pursue their claims in this action.[2] (Doc. 4). Based on these submissions, the Court ordered the issuance of a monition and injunction, which stated, in relevant part:

> [t]he commencement or further prosecution of any action or proceeding *against [Sarasota Youth Sailing], the Vessel, or other property of [Sarasota Youth Sailing]* with respect to any claims for which [Sarasota Youth Sailing] seeks exoneration from or limitation of liability herein, including any claim arising out of or incident to or connected with any loss, damage, injury, death, or destruction, more fully described in the complaint, be and the same is hereby restrained, stayed, and enjoined until the hearing and determination of this action.

(Doc. 7 at 5) (emphasis added).

Isaacs and Nock subsequently filed their respective answers and claims against Sarasota Youth Sailing. (Docs. 10, 17). In response, Sarasota Youth Sailing alleged,

---

[1] The "[s]ubmission of an ad interim stipulation is one way of satisfying [Supplemental] Rule F's requirement of the vessel or security for the vessel as a prerequisite to proceeding with a petition for limitation." *In re Carpe Diem 1969 LLC*, 2019 WL 332792, at *2 (D. V.I. Jan. 25, 2019) (citation omitted).
[2] Sarasota Youth Sailing did not ask that the Court stay any claims against Baugh. (Doc. 4).

3

among other defenses, that both Isaacs and Nock executed waivers releasing it from liability. (Docs. 13, 19).

In addition to these filings related to Isaacs and Nock, Baugh separately asserted a claim in this matter for "maintenance and cure" benefits against Sarasota Youth Sailing.[3] (Doc. 16). Baugh averred in his claim that he suffered emotional trauma and distress due to the incident, for which he required medical care and treatment. *Id.*

By way of the instant motion, Baugh now requests that the Court expand the injunction entered in favor of Sarasota Youth Sailing to encompass Isaacs and Nock's state court lawsuits against Baugh. (Docs. 18, 33). Sarasota Youth Sailing joins Baugh's request (Doc. 25), while Isaacs and Nock oppose it (Docs. 20, 21).[4]

II.

The purposes of the Limitation of Liability Act include "promot[ing] investment in the domestic commercial shipping industry." *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1227–28 (11th Cir. 1990) (citing 46 U.S.C. app. §§ 181–188).[5] "The

---

[3] "Maintenance and cure" involves a shipowner's duty "to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

[4] One of the contentions Isaacs and Nock raise in their oppositions is that Baugh lacks standing to seek an extension of the injunction because he is not a proper claimant in this proceeding. (Doc. 20 at 12–13; Doc. 21 at 10–11). Baugh counters that this argument is moot because Sarasota Youth Sailing joined in his motion, and that—in any event—he could have filed a separate case for maintenance and cure against Sarasota Youth Sailing and then moved to consolidate it with this one. (Doc. 33 at 4–5). Regardless of the merits of the parties' respective positions, the instant motion is not the procedural vehicle by which to determine whether Baugh has standing to pursue his claim in this matter. Thus, the Court will assume, without deciding, that Baugh and/or Sarasota Youth Sailing have standing to pursue the relief sought here.

[5] In 2006, Congress recodified the Act from 46 U.S.C. app. §§ 181–188 to 46 U.S.C. §§ 30501–30512. *See* Pub. L. 109-304, § 2, 120 Stat. 1485 (2006). Although the case law prior to 2006 cites

Act achieves this purpose 'by exempting innocent shipowners from liability, beyond the amount of their interest.'" *Beiswenger*, 86 F.3d at 1036 (quoting *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. (13 Wall) 104, 121 (1871)). Although the Act originally did not apply to watercraft "used in rivers or inland navigation," it has since been extended to cover all vessels. *Keys*, 893 F.2d at 1228–29 (citation omitted).

Federal courts have "exclusive admiralty jurisdiction" to decide whether a vessel owner is entitled to the safeguards afforded by the Act. *Beiswenger*, 86 F.3d at 1036–37 (citations omitted). To do so, courts engage in a two-step analysis: "First, [they] must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, [they] must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Keys*, 893 F.2d at 1230 (internal quotation marks and citation omitted).

The Act provides that only an owner of a vessel may initiate a limitation of liability proceeding. 46 U.S.C. § 30511(a) ("The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter."); *see also* Fed. R. Civ. P. Supp. R. F(1) (stating that "any *vessel owner* may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute") (emphasis added). The Act defines the "owner" of a vessel to "include[ ] a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. § 30501.

---

the old statutory scheme, for clarity, the Court refers to sections 30501–30512.

Notwithstanding this restriction, Baugh asks that the Court apply the injunction entered in favor of Sarasota Youth Sailing to him as well even though he is not the owner of the vessel at issue. (Doc. 18). This gist of Baugh's argument is that allowing Isaacs and Nock's state court matters to proceed against him during the pendency of this case will deplete the available insurance proceeds and may also lead to inconsistent rulings with respect to the enforceability of the waivers executed by Isaacs and Nock. *Id*. To buttress this contention, Baugh largely relies on the Ninth Circuit's decision in *In re Complaint of Paradise Holdings, Inc.*, 795 F.2d 756 (9th Cir. 1986). (Doc. 18 at 6–12). In that action, the Ninth Circuit affirmed the district court's decision to stay proceedings against a vessel's captain on the grounds that doing so furthered the Act's purposes, which it identified as "permit[ting] the shipowner to retain the benefit of his insurance" and "aggregat[ing] all claims against a shipowner so that they may be decided at one time." *Paradise Holdings*, 795 F.2d at 762. The Ninth Circuit explained that allowing the simultaneous litigation of a limitation action against the owner and a state court lawsuit against the captain would frustrate these goals and create the "possibility that the state litigation will have some preclusive effect on issues in the limitation proceeding." *Id*. As a result, the Ninth Circuit concluded that the district court could stay the state court case against the captain in its discretion. *Id*. at 763 (holding that "a district court has discretion to stay the state action or otherwise to shape the limitation proceedings in a manner that promotes the purposes of the Act").

Baugh's argument that Issacs and Nock's state court matters should be stayed pursuant to the Act fails. To begin, numerous courts have rejected the analysis employed by the Ninth Circuit in *Paradise Holdings* and have held that only the owner of a vessel is entitled to a stay of any related state court proceedings. *See*, *e.g.*, *Zapata Haynie Corp. v. Arthur*, 926 F.2d 484 (5th Cir. 1991); *In re Gore Marine Corp.*, 2009 WL 2365882, at *2 (M.D. Fla. July 30, 2009); *In re Thunder Marine, Inc.*, 2001 WL 1660254, at *1 (M.D. Fla. July 20, 2001); *In re Water Taxi of Fort Lauderdale, Inc.*, 1993 WL 13964702, at *1 (S.D. Fla. Sep. 21, 1991).[6] These courts have reasoned that the Act's benefits are, "by their plain terms," conferred solely on ship owners and that, regardless of whether the objectives of the Act may be inconsistent with its remedies, "it is not within the province of [the c]ourt[s] to reconcile any such inconsistencies when the language of the Act is plain." *Zapata*, 926 F.2d at 486; *see also Thunder Marine*, 2001 WL 1660254, at *2–3 (declining to enjoin a suit against a vessel's captain based on the Act's "plain language" and adding that, while "'allowing actions to proceed against the members of a ship's crew may strip a shipowner of insurance protection and give rise to later preclusive effects,'" such concerns are "for Congress, and not the courts, to address") (quoting *Water Taxi*, 1993 WL 13964702, at *1); *Gore Marine*, 2009 WL 2365882, at *2 (concluding that a "plain reading" of the Act allowed the vessel owner "to enjoin the state court action against it, but [did] not authorize the Court to enjoin the state court action against [any] other defendants").

---

[6] *But see In re A.B.K. Enters.*, No. 8:18-cv-191-JSM-TGW, (Doc. 122) (M.D. Fla. May 15, 2018) (granting an *unopposed* request to enjoin state court proceedings against a vessel's captain based on the

Baugh does not identify—and the Court cannot discern—any language in the Act that would provide a non-owner such as himself the type of injunctive relief he seeks in his motion. As the above case authority points out, the Act clearly provides that it applies purely to vessel owners, 46 U.S.C. § 30511(a), and it is well settled that a court should follow the plain language of an unambiguous statute, *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997) ("'When the words of a statute are unambiguous, then, [the] first canon [of statutory construction] is also the last: judicial inquiry is complete.'") (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

Moreover, the Act clarifies that its procedures do "not affect the liability of an individual as a master, officer, or seaman, even though the individual is also an owner of the vessel." 46 U.S.C. § 30512. As the court in *Thunder Marine* recognized, the fact that the Act "*specifically exempts* vessel masters, officers, and seamen from the liability limitation . . . further demonstrates Congress' intent to distinguish them from 'owners.'" *Thunder Marine*, 2001 WL 1660254, at *3 (citation omitted) (emphasis in original).

Even were the Court to adopt the Ninth Circuit's approach in *Paradise Holdings* and construe the Act as permitting the Court to stay Issacs and Nock's state court cases to promote the Act's purposes, *Paradise Holdings*, 795 F.2d at 763, Baugh's motion would still fail. While Baugh contends that Sarasota Youth Sailing's insurance

---

risk of inconsistent rulings and the depletion of insurance proceeds).

policy—on which he is an additional insured—could potentially be exhausted if the state court proceedings move forward against him (Doc. 18), Isaacs and Nock counter that Baugh is also "insured through two separate liability policies providing him with *significant* coverage" (Doc. 20 at 14) (emphasis in original); *see also* (Doc. 21 at 12) (arguing that Baugh is afforded coverage in the total amount of $21,000,000 separately from Sarasota Youth Sailing's liability insurance policy). Notably, Baugh does not contest these representations. (Doc. 33 at 3); *see also Paradise Holdings*, 795 F.2d at 764 (Ferguson, J., dissenting) (questioning whether insurance protection is a general purpose of the Act).

Baugh's concern regarding the risk of conflicting rulings is similarly unavailing. (Docs. 18, 33). The parties' competing positions as to the likelihood of whether the Court will have to address the nature and extent of Issacs and Nock's waivers and, if so, when those issues might ripen (Doc. 20 at 15; Doc. 33 at 2) indicate that the possibility of contradictory findings is too speculative at this juncture to justify overriding the Act's dictates here.

## IV.

In light of the above, Baugh's *Motion to Extend the Injunction* (Doc. 18) is denied.

DONE and ORDERED in Tampa, Florida, this 5th day of August 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

9

Copies to:
Counsel of record